# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSEPH H. BOWERS,

      Plaintiff,

vs.                                                                 No. CIV-06-0299 JB/RHS

J & M DISCOUNT TOWING, LLC,

      Defendant,

vs.

UNITED STATES OF AMERICA, and
INTERNAL REVENUE SERVICE of the
DEPARTMENT OF THE TREASURY,

      Third Party Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant J&M Discount Towing, LLC's

Motion to Dismiss Plaintiff's Complaint Against J&M With Prejudice and Memorandum in Support,

filed June 28, 2006 (Doc. 12)("Motion to Dismiss").  The Court held a hearing on this motion on

October 20, 2006.  The primary issues are: (i) whether the Court has subject-matter jurisdiction over

the case even though Plaintiff Joseph H. Bowers' Complaint does not, on its face, plead a federal

cause of action or raise a federal question; and (ii) whether the Court should dismiss Bowers'

Complaint against Defendant J&M Discount Towing, LLC ("J&M").  Because the Court determines

that it has subject-matter jurisdiction over this entire case, because the Court determines that Bowers

cannot sue J&M for performing towing work on behalf of the Internal Revenue Service, and because

Bowers has not presented evidence that he exhausted his administrative remedies before suing the

United States for unlawful tax collection, the Court will grant J&M's motion in part and deny it in part.

## FACTUAL BACKGROUND

J&M characterizes Bowers as a tax protester. See Motion to Dismiss at 3. The United States represents that Bowers owes the IRS over $360,000.00 in delinquent taxes for the calendar years 2000, 2001, and 2002. See Brief in Support of J&M Discount Towing, LLC's Motion to Dismiss Plaintiff's Complaint with Prejudice or in the Alternative, for Summary Judgment, filed October 19, 2006 (Doc. 29)("United States' Brief in Support"); Declaration of Dean Chavez ¶ 4, at 2 (executed August 8, 2006)("Chavez Declaration").

In April 2004, in connection with its efforts to collect Bowers' delinquent taxes, the IRS issued a notice of levy on Bower's BMW automobile. See Chavez Declaration ¶ 9, at 3. On June 29, 2004, the IRS arranged for J&M to tow the automobile to the auction site, which was located on J&M's premises. See id.

In June 2004, Bowers sued Brenda Jones, Dean Chavez, and J&M in the United States District Court for the District of New Mexico, seeking to have the automobile replevied. See Bowers v. Jones, No. CIV-04-0722 PJK/RHS (D.N.M. 2004). On November 24, 2004, the Honorable Paul J. Kelley, United States Circuit Judge, sitting by designation, dismissed the matter for failure to prosecute. See id., Order, filed November 24, 2004 (Doc. 4).

On February 16, 2005, the New Mexico Taxation and Revenue Department filed an application in state court for a temporary restraining order, alleging that Bowers was engaged in business as a dentist and periodontist, and seeking to have Bowers enjoined from doing business to compel payment of state taxes. See Sec'y, Taxation & Revenue Dep't v. Bowers, No. D-0101-CV-

02005-00359 (First N.M. Dist. Ct. 2005).  According to documents filed with the state complaint,

Bowers owed the State of New Mexico $103,090.87 for the periods April 2001 through July 2004.

See Motion to Dismiss, Exhibit A, Application of Injunction from Engaging in Business, ¶ 6, at 2;

Exhibit 3, Affidavit of Tax Collector ¶ 5, at 1.  The state court entered a stipulated order resolving

the matter on October 3, 2005.  See Sec'y, Taxation & Revenue Dep't v. Bowers, No. D-0101-CV-

02005-00359, Docket, available at http://www.nmcourts.com/caselookup/search.htm.

## PROCEDURAL BACKGROUND

On November 11, 2005, Bowers initiated this case by filing suit against J&M, alleging a state-

law conversion claim related to the towing, detention, and sale of his vehicle.  See Bowers v. J & M

Discount Towing, LLC, No. D-0202-CV-2005-08419 (Second N.M. Jud. Dist. Nov. 11, 2005).

Bowers alleged J&M towed his automobile, and allowed it and the personal contents in the car to be

sold "without any lawful claim against plaintiff or the vehicle."  See id., Complaint ¶ 4, at 1 ("Bowers'

Complaint").  J&M contends that it lawfully towed the car at the request of the IRS, which was

enforcing a levy to collect delinquent taxes from Bowers.  See Motion to Dismiss at 6.

J&M filed a third-party complaint against the United States on March 10, 2006.  See Bowers

v. J & M Discount Towing, LLC, No. CV-2005-08419, Third Party Complaint Against the United

States of America Internal Revenue Service of the Department of the Treasury.  In its third-party

complaint, J&M alleges that it "did nothing but comply with specific instructions in a contract with

the United States, which was exercising a core government function."  Id. ¶ 5, at 2.  Accordingly,

J&M contends that it "is entitled to the government contractor defense, which gives J&M the

sovereign immunity of the federal government."  Id.

The United States removed this case to federal court on April 14, 2006 pursuant to 28 U.S.C.

§§ 1441, 1442, and 1446. See Notice of Removal ¶ 3, at 2, filed April 14, 2006 (Doc. 1)("Notice of Removal"). The United States represents that the IRS received J&M's Third-Party Complaint on or about March 13, 2006. See id. ¶ 1, at 1. The United States contends that the Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. See id. ¶ 3, at 2.

The United States then filed a motion to dismiss the Third-Party Complaint, arguing sovereign immunity barred J&M's action against it. See Motion to Dismiss Third-Party Complaint and Supporting Brief, filed June 13, 2006 (Doc. 7). J&M filed this Motion to Dismiss Bowers' claim on June 28, 2006. Subsequently, the United States requested to withdraw its motion to dismiss J&M's third-party complaint against it and represented to the Court that it had agreed to: (i) indemnify J&M pursuant to the terms of an Indemnification Agreement between the parties; (ii) represent J&M in this litigation; and (iii) cooperate with J&M in reaching an agreement on reasonable compensation for attorneys' fees should the United States be found liable for J&M's attorneys' fees. See Amended Motion to Withdraw the United States' Motion to Dismiss Third Party Complaint, filed July 26, 2006 (Doc. 20).

The Court granted the United States' request to withdraw its opposition to the third-party complaint on October 17, 2006. See Memorandum Opinion and Order, filed October 17, 2006 (Doc. 28). On October 19, 2006, the United States filed its brief in support of J&M's motion to dismiss Bowers' cause of action.

Pursuant to Local Rule 7.4(a), whenever any party appears pro se, a moving party "must request concurrence of each party, at least three (3) working days before filing a motion." D.N.M.L.R.-Civ. 7.4(a). On June 1, 2004, more than three weeks before filing this motion, J&M's counsel asked Bowers if he would consent to dismissing his lawsuit. J&M represents that Bowers

responded: "[W]hy would I do that?" Motion to Dismiss at 3. J&M's counsel explained that, in his opinion, Bowers does not have a case, and reminded Bowers that J&M has counterclaimed for sanctions. See id. J&M's counsel states that Bowers indicated he would respond to J&M's counsel at a later time, but that he had not responded at the time J&M filed its Motion to Dismiss. See id.

J&M moves the Court to dismiss Bowers' claims with prejudice. See Motion to Dismiss at 8. J&M reserves its right to file a motion for attorneys' fees under rule 11 of the Federal Rules of Civil Procedure within thirty days of the entry of judgment. See D.N.M.L.R.-Civ. 54(a).

## RELEVANT LAW REGARDING REMOVAL

The Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have recognized the derivative jurisdiction doctrine, but in 1986, Congress abolished the doctrine for removals under 28 U.S.C. § 1441. When a defendant files a third-party complaint against the United States for collection of revenue, 28 U.S.C. § 1442(a) allows removals of an entire case. Moreover, once a case is removed, and no one files a motion to remand, the only issue for the court is whether the court has subject-matter jurisdiction.

### 1.   **Derivative Jurisdiction Doctrine.**

Before 1986, the Supreme Court of the United States had characterized federal courts' removal jurisdiction as "a purely derivative form of jurisdiction." Arizona v. Manypenny, 451 U.S. 232, 242 (1981). The Supreme Court in Arizona v. Manypenny explained that, "[i]n the area of general civil removals, it is well settled that if the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there." Id. at 243. The United States Court of Appeals for the Tenth Circuit had also recognized the derivative jurisdiction doctrine. See Goodrich v.

Burlington N. R.R. Co., 701 F.2d 129, 130 (10th Cir. 1983).  In Goodrich v. Burlington Northern Railroad Company, the Tenth Circuit affirmed a district court's decision to remand a defendant's third-party complaint filed against the United States in state court.  See id. at 130-31.  The Tenth Circuit noted that, although the federal district court would have had jurisdiction over the third-party complaint had the defendant originally filed the action in federal court, the action could not be removed, because the state court did not have jurisdiction over the third-party complaint.  See id.

The relevance of derivative jurisdiction may have been largely abolished in 1986, however, when Congress amended the general removal statute, 28 U.S.C. § 1441, to provide that a "court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such a civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."  28 U.S.C. § 1441(f).  See Miles v. Okun (In re Miles), 430 F.3d 1083, 1095 n.1 (9th Cir. 2005)("[T]he fact that the state court lacked jurisdiction does not defeat removal jurisdiction.").  At least two district courts within the Tenth Circuit, in evaluating motions to remand cases removed pursuant to 28 U.S.C. § 1441, have concluded that "[t]he 1986 amendment by its terms permits removal in all cases where removal was previously barred by the derivative jurisdiction doctrine."  Yellow Freight Sys., Inc. v. Adams Brush Mfg. Co., No. CIV-97-2310 EEO, 1997 U.S. Dist. LEXIS 13491, at *9 (D. Kan. Aug. 5, 1997).  See Foss v. United States, 705 F. Supp. 537, 538 (D.N.M. 1989)(Mechem, J.).

Finally, it must be noted that the expansion of jurisdiction that 28 U.S.C. § 1441(f) provides may be limited to cases removed under 28 U.S.C. § 1441.  The original version of the amendment, initially codified as 28 U.S.C. § 1441(e), provided that "[t]he court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the

State court from which such civil action is removed did not have jurisdiction over that claim."

Barnaby v. Quintos, 410 F. Supp. 2d 142, 144 (S.D.N.Y. 2005)(quoting Judicial Improvements Act

of 1985, Pub. L. 99-336 § 3, 100 Stat. 633).  In 2002, Congress redesignated the 1985 amendment

as 28 U.S.C. § 1441(f) and replaced the phrase "[t]he court to which such civil action is removed,"

with "[t]he court to which a civil action is removed under this section."  Barnaby v. Quintos, 410 F.

Supp. 2d at 144 (quoting Pub. L. 107-273 § 11020(b)(3)(A), 116 Stat. 1758, 1827)(emphasis added).

In making this change, some courts have concluded that "Congress left no doubt that Section 1441(f)

applies only to removals under Section 1441 and not to removals under any other section of the

United States Code."  Barnaby v. Quintos, 410 F. Supp. 2d at 144.  Indeed, the majority of the

Circuit Courts of Appeals that have addressed this issue, including the Tenth Circuit, have determined

that federal courts' jurisdiction remains derivative of state courts' jurisdiction for those cases removed

under statutes other than 28 U.S.C. § 1441.  See Kasi v. Angelone, 300 F.3d 487, 503 n.6 (4th Cir.

2002)(noting that a "federal court's jurisdiction upon removal under [28 U.S.C.] § 1442(a)(1) is

derivative of the state court's jurisdiction"); Oklahoma v. Hopkins (In re Criminal Subpoena Duces

Tecum Served on FBI SA Ed Gray), No. 97-6385, 1998 U.S. App. LEXIS 25779, at **2-3 (10th

Cir. Oct. 13, 1998)(referring to the derivative nature of a federal court's jurisdiction in the context

of a case removed under 28 U.S.C. § 1442);[1] Elko County Grand Jury v. Siminoe (In re Elko County

Grand Jury), 109 F.3d 554, 555 (9th Cir. 1997)(finding that federal courts jurisdiction over cases

removed under 28 U.S.C. § 1442 was derivative in nature); Edwards v. U.S. Dep't of Justice, 43 F.3d

_____

[1]The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored.
But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material
issue that has not been addressed in a published opinion; and (ii) it would assist the court in its
disposition."  This unpublished decision meets both these criteria, and the rules therefore allow
citation to this unpublished decision.

312, 316 (7th Cir. 1994)("The jurisdiction of the federal court upon removal, pursuant to 28 U.S.C.

§ 1442, is essentially derivative of that of the state court.").  But see North Dakota v. Fredericks, 940

F.2d 333, 337 (8th Cir. 1991)("[T]he policy of Congress underlying new § 1441(e)[, the predecessor

statute of 28 U.S.C. § 1441(f),] supports the complete abandonment of the derivative-jurisdiction

theory, even though the words of the statute clearly do not reach this far.").

      **2.**      **28 U.S.C. § 1442(a)(1).**

      When a civil lawsuit is filed against the United States, any federal agency, or any federal

officer in their official capacity  "on account of any right, title or authority claimed under any Act of

Congress for the . . . collection of revenue," the action may be removed to the federal district court

for the district and division in which the state court resides.  28 U.S.C. § 1442(a)(1).  A private party

may invoke the federal officer removal provision if it can show: "(1) that it acted under the direction

of a federal officer; (2) that there is a causal nexus between the plaintiff's claims and the acts the

private corporation performed under the federal officer's direction; and (3) that there is a colorable

federal defense to the plaintiff's claims."  Greene v. Citigroup, Inc., No. 99-1030, 2000 U.S. App.

LEXIS 11350, *6 (10th Cir. May 19, 2000).  When the United States is sued as a third party, and

exercises its right to removal pursuant to 28 U.S.C. § 1442, the entire action, including the original

complaint, is removed to federal court.  See Reiser v. N.J. Air Nat'l Guard, 152 Fed. Appx. 235, 237

(3d Cir. 2005).

      **3.**      **Motions to Remand.**

      A party opposing removal may move "to remand the case on the basis of any defect other than

lack of subject-matter jurisdiction . . . within 30 days after the filing of the notice of removal under

section 1446(a)."  28 U.S.C. § 1447(c).  Failure to move for remand within thirty days on any basis

other than subject-matter jurisdiction constitutes a waiver of any objection to the removal on grounds of procedural irregularity.  See Feichko v. Denver & Rio Grande W. R.R. Co., 213 F.3d 586, 590 (10th Cir. 2000); McMahon v. Bunn-O-Matic Corp., 150 F.3d 651, 653 (7th Cir. 1998)("[A]ny defect in the removal process other than the lack of subject-matter jurisdiction must be raised within 30 days or is forfeited.").  A case may be remanded for lack of subject-matter jurisdiction at any time before final judgment is entered.  See 28 U.S.C. § 1447(c).

<h2 align="center">LAW RELEVANT TO THE COURT'S JURISDICTION</h2>

Congress has placed the adjudication of interests in property that federal officers seize exclusively in the jurisdiction of federal courts.  Congress has given taxpayers wishing to sue for damages resulting from unlawful tax collection an exclusive remedy in federal court under 26 U.S.C. § 7433(a).  Moreover, the Supreme Court has recently indicated that federal courts have original jurisdiction over state law claims that implicate important federal interests, such as the interpretation of revenue statutes.

### 1.      The Well-Pleaded Complaint Rule.

A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Federal-question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)(citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)).  As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law."  Id. at 392.

The defendant may not sneak in a federal question through the back door by raising a federal defense, for "it is now settled law that a case may not be removed to federal court on the basis of a

federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Id. at 393 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 12 (1983)). See also Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1236 (10th Cir. 2003)("It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.'")(quoting Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986)).  While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated."  Caterpillar, Inc. v. Williams, 482 U.S. at 399.  Even the plaintiff can go only so far in attempting to invoke federal-question jurisdiction, because "[a]ny statements in the complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a probable defense are to be disregarded" in deciding whether federal question jurisdiction exists.  Mescalero Apache Tribe v. Martinez, 519 F.2d 479, 481 (10th Cir. 1975).

### 2. **28 U.S.C.§ 2463.**

Congress has placed the adjudication of interests in property that federal officers seize "exclusively within the jurisdiction of the federal courts."  N.H. Fire Ins. Co. v. Scanlon, 362 U.S. 404, 409 (1960).  Under federal law, "property taken or detained under any revenue law of the United States shall not be repleviable, but shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof."  28 U.S.C. § 2463.  The Supreme Court has described 28 U.S.C. § 2463's purpose as an effort to protect property in the IRS' custody from cursory actions in state courts.  See N.H. Fire Ins. Co. v. Scanlon, 362 U.S. at 409.

State courts that have considered 28 U.S.C. § 2463 have ruled that the statute precludes any state court action, including a damage action, relating to property that the IRS seized. See Berry v. Ketchikan Pub. Utils., 727 P.2d 762, 763-64 (Alaska 1986)("We agree with other states that have held that state courts have no jurisdiction over property seized under internal revenue laws."); Williams v. Atlanta Fed. Sav. & Loan Ass'n, 138 S.E.2d 613, 614 (Ga. Ct. App. 1964)(holding that, where the plaintiff's claim would interfere with the District Director of Internal Revenue's control over the property, jurisdiction was vested exclusively in the appropriate federal courts); People v. Hernandez, 216 N.W.2d 438, 439 (Mich. Ct. App. 1974)(invalidating state district court's order to return cash the IRS detained even though law enforcement officers improperly seized the cash during the execution of a search warrant). But see Gen. Exporting Co. v. Star Transfer Line, 136 F.2d 329, 332 (6th Cir. 1943)(citing United States v. Klein, 303 U.S. 276, 281 (1938), and noting that, although adjudication of property interests in seized property was within the exclusive jurisdiction of federal courts, a state court was not powerless to render judgment on other matters not inconsistent with federal authority and to make its judgment effective at federal courts' disposition on control over the property). Finally, although 28 U.S.C. § 2463 limits the adjudication of interests in property that federal officers seized exclusively to federal courts having jurisdiction, it does not confer jurisdiction on the federal district courts, and it is not an effective waiver of the United States' sovereign immunity. See Lonsdale v. United States, 919 F.2d 1440, 1444 (10th Cir. 1990). Any cause of action, along with any corresponding waiver of immunity, must be found in a separate statute. See id.

### 3.   Suits for Unlawful Tax Collection.

Congress has created a cause of action for damages against the United States related to

unlawful tax collection.

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7433(a). With respect to unlawful tax collection actions, the Tenth Circuit has recognized that "[a] civil action against the United States under 26 U.S.C. § 7433 provides the exclusive remedy for recovery of damages." Rosson v. United States, 127 Fed. Appx. 398, 400-01 (10th Cir. 2005). Other federal courts that have considered this issue are in accord. See Sachs v. United States, 59 Fed. Appx. 116, 120 (6th Cir. 2003)(holding that taxpayers may not bring a Bivens action against revenue agents for violations of their Fourth Amendment rights because 26 U.S.C. § 7433 provides the exclusive remedy for recovering damages for such actions); Schwarz v. United States, 234 F.3d 428, 432-33 (9th Cir. 2000)("Section 7433(a) states that the right of action it creates is the 'exclusive remedy for recovering damages resulting from such actions,' the actions being any activity 'in connection with any collection of Federal tax' that is performed in 'disregard' of any provision of the Revenue Code or regulations."). The United States is the real party in interest when a taxpayer brings a suit under 26 U.S.C. § 7433 for official action that revenue agents take. See Dugan v. Rank, 372 U.S. 609, 620 (1963)("[A] suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'")(internal citations omitted); Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985)("[A] suit against IRS employees in their official capacity is essentially a suit against the United States."); California ex rel. Ervin v. Dist. Dir., 170 F. Supp. 2d 1040, 1045 (E.D. Cal. 2001)("The United

States is entitled to be substituted as the proper party respondent to the extent that the respondents named in the Petition are sued because of action taken by Internal Revenue Service employees in their official capacities.").  Finally, in connection with this statute, federal courts, including district courts within the Tenth Circuit, have recognized that taxpayers bringing suit under 26 U.S.C. § 7433(d) must first exhaust their administrative remedies.  See Venen v. United States, 38 F.3d 100, 103 (3d Cir. 1994)("Failure to exhaust deprives the court of jurisdiction."); Quinn v. United States, No. CIV 03-192-R, 2003 U.S. Dist. LEXIS 17077, *17 n.14 (W.D. Okla. July 13, 2003).

The administrative remedies with which a taxpayer must comply are described in 26 C.F.R. § 301.7433-1(e).  Specifically, the taxpayer must file an administrative claim, in writing, for the lesser of $1,000,000.00 or the actual, direct damages resulting from the unlawful tax collection that is actionable under 26 U.S.C. § 7433.  See 26 C.F.R. § 301.7433-1(e)(1).  The administrative claim must contain: (i) the taxpayer's identity, contact information, and times in which it is most convenient for the IRS to contact the taxpayer; (ii) detailed grounds for the claim; (iii) a description of the injuries suffered by the taxpayer leading to the claim; (iv) the dollar amount of the claim, including reasonably foreseeable damages not yet suffered; and (v) the signature of the taxpayer or the taxpayer's authorized representative.  See 26 C.F.R. § 301.7433-1(e)(2)(i)-(v).

At least one decision of the Tenth Circuit casts doubt, however, on whether 26 U.S.C. § 7433's exclusivity provision precludes taxpayer suits against third parties.  In Crow v. Wyoming Timber Products Co., 424 F.2d 93 (10th Cir. 1970), a taxpayer, claiming to be the true owner of certain timber, brought a replevin action in state court against a private party who had bought the timber at a public sale after the IRS had levied on, seized, and sold the timber.  See id. at 95.  After

the defendants filed a "counterclaim for interpleader"[2] against the United States, the United States and the defendants petitioned for removal to federal court.  The federal district court held that it had federal question jurisdiction under 28 U.S.C. § 1331, because the case arose under 26 U.S.C. § 7426, a statute that permitted "a suit in federal court for limited and exclusive relief against the United States on a claim that property was wrongfully levied on or sold by the Internal Revenue Service." Id. at 96.

The Tenth Circuit, invoking the well-pleaded complaint rule, reversed the district court because "no federal question appear[ed] on the face of the complaint . . . which simply alleges plaintiff's ownership and entitlement to the timber and the defendants' wrongful detention." Id.  The Tenth Circuit noted that, although the defendants' title and interest was derived from a federal tax sale, the plaintiff's cause of action presented "a state law question because state rather than federal law determines the nature and extent of the taxpayer's interest in property to which a federal tax lien can attach." Id.  The Tenth Circuit reasoned that a "plaintiff does not conceal a federal question when the allegedly relevant federal statute creates no rights against the party whom he is suing." Id.

### 4.    Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.

In Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005), the plaintiff, Grable & Sons Metal Products ("Grable"), a taxpayer and former owner of real property, brought a quiet title action in Michigan state court against the defendant, Darue Engineering & Manufacturing ("Darue"), the purchaser of the property at a federal tax sale.  Grable argued that

---

[2]The defendant in Crow v. Wyoming Timber Products Co. filed its "counterclaim for interpleader" against the United States because it asserted that the plaintiff should recover only from the United States.  See Crow v. Wyo. Timber Prods. Co., 424 F.2d 93, 95 (10th Cir. 1970).  The Tenth Circuit noted that this procedure is not interpleader, and, under these circumstances, it was more appropriate to describe the United States as having been "properly impleaded." Id. at 96.

the IRS had improperly seized its property, because it failed to notify Grable of the seizure in the precise manner that 26 U.S.C. § 6335(a) required.  Darue removed the case to federal court, invoking federal question jurisdiction, "because the claim of title depended on the interpretation of the notice statute in the federal tax law."  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 311.  The United States District Court for the Western District of Michigan agreed that Darue's claim involved a question of federal law and the United States Court of Appeals for the Sixth Circuit affirmed.  See id.

In a unanimous opinion, the Supreme Court in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, acknowledged that although federal question jurisdiction is typically established "by plaintiffs pleading a cause of action created by federal law . . . [the] Court [has] recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues."  Id. at 312 (citing Hopkins v. Walker, 244 U.S. 486, 490-91 (1917)).  To fit within this latter category, the Supreme Court noted that a case must meet two requirements.  First, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 313.  Second, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of [28 U.S.C.] § 1331."  Id. at 313-14.  The Supreme Court stated in summary: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  Id. at 314.

-15-

The Supreme Court in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing applied this reasoning to find that the federal courts had jurisdiction over Grable's quiet title suit.  The Supreme Court noted that, not only was the meaning of a federal statute's notice provision contested, but that the interpretation of the statute implicated a substantial federal interest that a federal forum should resolve.  See id. at 315.  To safeguard  the government's "strong interest in the 'prompt and certain collection of delinquent taxes,'" the Supreme Court reasoned "the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like Darue to satisfy themselves that the Service has touched the bases necessary for good title."  Id. (internal citation omitted).  Nor did the Supreme Court believe that the exercise of federal jurisdiction in Grable's case would effect an improper aggrandizement of federal judicial authority at the expense of state courts.  See id.  ("[B]ecause it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor.").

This Court has had one opportunity to address the impact of the Supreme Court's holding in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing on federal-question jurisdiction.  In Bar J Sand & Gravel, Inc. v. Western Mobile New Mexico, Inc., No. CIV 05-800 JB/WPL, 2005 U.S.Dist. LEXIS 39142 (D.N.M. Sept. 29, 2005), the Court remanded a state-law breach of contract claim because the case did not present "a necessary and substantial question of federal law."  Id. at *35.  The plaintiff in Bar J Sand & Gravel, Inc. v. Western Mobile New Mexico, Inc., Bar J Sand & Gravel, Inc. ("Bar J"), had obtained a permit from the Pueblo of San Felipe to remove sand and gravel from tribal lands.  See id. at **1-2.  The permit's terms prohibited Bar J from assigning any interest in the permit without the written approval of the Pueblo and the Secretary of

the Interior.  See id. at *2.  Subsequent to receiving the permit, Bar J entered into an Exclusive

Supply Agreement ("ESA") withWestern Mobile New Mexico, Inc. ("WMNM") to sell, on an

exclusive basis, 500,000 tons of material per year.  See id. at *3.  The ESA explicitly stated that it

was not an assignment of Bar J's interests in the permit from the Pueblo of San Felipe.  See id. at

**3-4.

Bar J sued WMNM in state court alleging that WMNM had assigned its rights under the ESA

without Bar J's permission, in contravention of the ESA, and that thereafter WMNM and its assignee

had failed to mine the amount of material agreed upon in the ESA.  See id. at **4-5.  WMNM

removed the case to this Court, invoking federal-question jurisdiction pursuant to 28 U.S.C. § 1331,

and alleging that the ESA was an improper attempt to assign Bar J's rights under its permit from the

Pueblo of San Felipe without permission of the Secretary of the Interior.  See id. at **5-6.  WMNM

argued that, because the ESA purported to effect a transfer that was impermissible under the terms

of Bar J's permit and federal regulations, the ESA was void and unenforceable.  See id. at *6.

The Court remanded the case because, in its view, WMNM failed to establish that the case

implicated a substantial question of federal law.  The Court reasoned that, "[u]nlike Grable, Bar J

does not premise its breach of contract claim on any point of federal law," and that "Bar J grounds

his right to relief in basic state contract law."  Id. at **33, 35.  The Court pointed out that Bar J's

pleadings did not invoke federal law or assert that its assignment of interest complied with federal

law, "given that Bar J does not assert that there was an assignment at all."  Id. at *35.  The Court

determined that it was unnecessary for it to construe any federal law, because for Bar J to prevail, it

"merely [had] to show that the common law elements of breach of contract have been met without

referencing any federal law."  Id.

The Court's disposition in Bar J Sand & Gravel, Inc. v. Western Mobile New Mexico, Inc. seems to be consistent with the Tenth Circuit's understanding of Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing. In Nicodemus v. Union Pacific Corp., 440 F.3d 1227 (10th Cir. 2006), the Tenth Circuit considered Wyoming landholders' state-law trespass and unjust enrichment actions brought against the defendants, Union Pacific, alleging Union Pacific had exceeded the scope of its railroad rights-of-way, acquired by virtue of federal land grants, across the plaintiffs' lands. See id. at 1233. The Tenth Circuit upheld federal jurisdiction by applying a three-part analysis similar to that applied by this Court in Bar J Sand & Gravel, Inc. v. Western Mobile New Mexico, Inc.

First, the Tenth Circuit in Nicodemus v. Union Pacific Corp. noted that the plaintiffs' case would necessarily turn on an interpretation of federal law -- the court would have to determine whether Union Pacific's use of the land exceeded the scope of its rights as established in the federal land grants. See Nicodemus v. Union Pac. Corp., 440 F. 3d at 1235. The Tenth Circuit emphasized that, because of this necessity, the "federal issue, therefore, arises in [the] Plaintiffs' case-in-chief." Id. Second, the Tenth Circuit acknowledged that "[t]he presence of a federal issue . . . is not necessarily 'a password opening federal courts to any state action embracing a point of federal law,'" but indicated that, because the government had a reversionary interest in the rights-of-way when they were no longer being used for their designated purposes, "the contested interpretation of the federal land-grant statutes as between these parties involves a substantial federal issue." Id. at 1235, 1236 (emphasis added). Finally, the Tenth Circuit stated that the exercise of federal jurisdiction in this case would not disrupt the balance of judicial responsibility between state and federal courts, because it would be the "rare state trespass and unjust enrichment case that so uniquely turns on a critical matter

-18-

of federal law." Id. at 1237.

>    **5.**     **26 U.S.C. § 6331.**

The Internal Revenue Code grants the IRS the authority to collect taxes from a delinquent taxpayer "by levy upon all property and rights to property" belonging to the taxpayer. 26 U.S.C. § 6331(a). This provisional remedy enables the IRS to execute on a tax lien and thereby collect delinquent taxes, without judicial intervention. See Kane v. United States, 145 F.3d 1218, 1221 (10th Cir. 1998). "[T]he need of the government promptly to secure its revenues" justifies the IRS' broad authority under 26 U.S.C. § 6331(a). United States v. Nat'l Bank of Commerce, 472 U.S. 713, 721 (1985)(quoting Phillips v. Commissioner, 283 U.S. 589, 596 (1931)).

At least one other federal district court has determined that the immunity the IRS enjoys in collecting government revenues under 26 U.S.C. § 6331 extends to agents and independent contractors who assist in collection activities at the IRS' direction. See Oasis Nite Club, Inc. v. Diebold, Inc., No. 17356, 1973 U.S. Dist. LEXIS 14240, **36-39 (D. Md. Mar. 30, 1973). In Oasis Nite Club, Inc. v. Diebold, Inc., the United States District Court for the District of Maryland held that 26 U.S.C. § 6331 impliedly authorized the actions of a locksmith who, at the direction of IRS agents, entered a taxpayer's private office and opened safes from which the IRS seized funds to satisfy a tax levy. See id. at *39. To support its conclusion, the federal district court posited the following hypothetical:

>    For example, if the IRS seized a car, they might decide to hire a private towing
>    company to take the car away. In arranging for the towing company to tow the car,
>    a tow truck might "trespass" upon the property of the taxpayer by driving on the
>    taxpayer's driveway or lawn. But Congress must have intended 26 U.S.C. § 6331 to
>    authorize the tow trucks' actions; otherwise, the IRS would be unable to secure the
>    help of private persons and entities to help in lawful tax collection since such persons
>    and entities would be liable in a civil suit for damages caused while acting under the

lawful direction of the IRS.

Id. at *38.  The court in Oasis Nite Club, Inc. v. Diebold, Inc. reasoned that, considering "the sweeping power Congress has given the Secretary of the Treasury and his delegates[,] . . . Congress must have foreseen that the IRS might need the help of persons outside of government officials to help them in their collection."  Id. at **37-38.

###   6.    The Federal-Contractor Defense.

The Supreme Court has recognized that, "[w]here the government has directed a contractor to do the very thing that is the subject of the claim," special circumstances exist allowing a contractor to assert a defense.  Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 n.6 (2001).  See Peoples v. CCA Det. Ctrs., 422 F.3d 1090, 1104 n.9 (10th Cir. 2005).  In Boyle v. United Technologies Corp., 487 U.S. 500 (1988), the Supreme Court articulated a three-part test for determining when federal common law displaces state products liability law in a suit against a government military contractor. See id. at 512.  The Supreme Court in Boyle v. United Technologies Corp. ruled that there was no liability under state law when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." Id.

Cases both before and after the Supreme Court's decision in Boyle v. United Technologies Corp. indicate disagreement among the courts with respect to whether the government-contractor defense extends beyond military contracts.  See Andrew v. Unisys Corp., 936 F. Supp. 821, 830 (W.D. Okla. 1996)(citing cases).  At least one district court within the Tenth Circuit, however, has determined that the defense is not limited to military contracts.  See id.  In Andrew v. Unisys Corp.,

the United States District Court for the Western District of Oklahoma concluded that the manufacturer of a mail sorting machine could rely on the government-contractor defense in a personal injury suit that United States Postal Service employees filed against it where: (i) the government approved reasonably precise specifications for the sorting machine; (ii) the defendant's equipment conformed to those specifications; and (iii) the defendant warned the government about the dangers in the use of the sorting machine that were known to it but not to the government. See id. Similarly, at least one Circuit Court of Appeals has extended the application of the government-contractor defense beyond the context of products liability cases and extended it to service contracts. See Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329, 1334 (11th Cir. 2003)(reasoning that the essential question under Boyle v. United Technologies Corp. is "whether subjecting a contractor to liability under state tort law would create a significant conflict with a unique federal interest").

## ANALYSIS

Because subject-matter jurisdiction involves the Court's power to hear a case, see Arbaugh v. Y & H Corp., 126 S. Ct. 1235, 1244 (2006), the Court must first address whether it has jurisdiction over the matter. The Court concludes that it has jurisdiction over the case, including the original action between Bowers and J&M. The Court will grant J&M's motion and dismiss Bowers' complaint.

## I.   THE COURT HAS JURISDICTION OVER THE ENTIRE CASE.

The Court need not determine whether the United States properly removed this case. Now that the case is in federal court, and no party has filed a motion to remand, the only issue remaining is whether the Court has jurisdiction over the case. Bowers argues that, because of the circumstances of this case, the Court has no jurisdiction to address the merits of any claims and has no choice but

to dismiss the United States from this matter and to remand the case the state court.  The Court disagrees and concludes that the Court has jurisdiction over the entire case.

**A.     THE COURT NEED NOT DETERMINE WHETHER THE CASE WAS PROPERLY REMOVED.**

Bowers, in his response to J&M's motion to dismiss his claim, contends that removal to federal court was procedurally defective because the United States, not J&M, removed the case, and because it is now too late for J&M to effect such a removal.  See Plaintiff's Response to Defendant J&M Discount's Motion to Dismiss Bowers' Complaint at 3 n.1, filed July 14, 2006 (Doc. 17)("Bowers' Response").  Even if the Court were to construe Bowers' arguments as a request to remand the case, however, the Court could not remand the case on the basis of defects in the removal procedure.

The United States removed the entire "civil action," not just the claim between it and J&M. See Reiser v. N.J. Air Nat'l Guard, 152 Fed. Appx. at 237; 28 U.S.C. § 1441(a).  On the other hand, the Court acknowledges that the United States' Notice of Removal may not have been timely filed. See 28 U.S.C. § 1446(b) (requiring notice of removal be filed within thirty days of receiving formal service of the plaintiff's pleadings).  Neither J&M nor Bowers has filed a motion to remand, however, and the time to make such a motion has expired.  See 28 U.S.C. § 1447(c) (requiring motions to remand on any basis other than subject-matter jurisdiction be filed within thirty days of removal). Although the Tenth Circuit has not directly addressed the question whether a district court may remand a case sua sponte for a procedural defect, judges in the circuit have recognized that "every circuit to have considered the issue has held that a district court lacks this power and issued a writ of mandamus directing the district court to exercise jurisdiction."  Archuleta v. Lacuesta, 131 F.3d

1359, 1366 (10th Cir. 1997)(Baldock, J., dissenting).  See McKinnon v. County of Shawnee, No.

01-4173-SAC, 2002 U.S. Dist. LEXIS 4711, **2-4 (D. Kan. Feb. 21, 2002)(citing cases from the

Third, Fifth, Sixth, Ninth, and Eleventh Circuits).  Failure to remove within the thirty-day window

that 28 U.S.C. § 1446(b) provides constitutes a procedural defect that failure to move for remand

within thirty days of removal may waive.  See Wilson v. Gen. Motors Corp., 888 F.2d 779, 781 (11th

Cir. 1989)(citing Grubbs v. Gen. Elec. Credit Corp., 405 U.S. 699, 702 (1972)).

     The Court cannot, at this time, hear issues regarding whether the wrong party removed or

whether removal was timely.  The entire case is here now.  At this juncture, the Court must only

decide whether it has subject-matter jurisdiction over the case.

    **B.**    **CONGRESS HAS ELIMINATED THE DERIVATIVE JURISDICTION DOCTRINE FOR CASES REMOVED PURSUANT TO 28 U.S.C. § 1441.**

     Bowers contends that, because the state court did not have jurisdiction over J&M's claim

against the United States, the Court acquired no jurisdiction from the United States' removal.

Bowers characterizes the removal as "improper, frivolous, and . . . 'exactly the type of 'legal tour de

force' that lay persons abhor.'"   Bowers' Response at 2 (quoting Illinois v. Kerr-McGee Chem.

Corp., 677 F.2d 571, 575 (7th Cir. 1982)).  In support of his argument, Bowers invokes the doctrine

of derivative jurisdiction and cites the Tenth Circuit's decision in Goodrich v. Burlington Northern

Railroad Company.

     J&M argues that the state court did not have jurisdiction over Bowers' claim because,

consistent with 28 U.S.C. § 2463, federal courts have exclusive jurisdiction over the adjudication of

interests in property taken or detained pursuant to federal revenue laws.  See Motion to Dismiss at

4-5.  The United States' adds that sovereign immunity bars any lawsuit against it, in any court, unless

Congress expressly waives that immunity.  <u>See</u> United States Brief in Support at 9.  Bowers disagrees

that the state court did not have jurisdiction over his conversion claim against J&M, but contends

that, because of the United States' sovereign immunity, the state court did not have jurisdiction over

J&M's third-party complaint against the United States, and therefore the United States' removal did

not grant this Court jurisdiction.  <u>See</u> Bowers' Response at 3.

Bowers' argument fails, however, because, pursuant to Congress' 1986 amendment of 28

U.S.C. § 1441, a "court to which a civil action is removed under [that] section is not precluded from

hearing and determining any claim in such a civil action because the State court from which such civil

action is removed did not have jurisdiction over the claim." 28 U.S.C. § 1441(f).  Furthermore, his

reliance on <u>Goodrich v. Burlington Northern Railroad Company</u> is not helpful to the Court, because

the Tenth Circuit's opinion in that case relies on a different statutory framework than the one within

which the Court acts today, and the opinion does not indicate under what statutory provision the

United States' removed the case.  Without more guidance from the Tenth Circuit, the Court feels it

must rely on the plain language of the removal statutes as they apply to this case.

The United States removed this case to federal court pursuant to 28 U.S.C. §§ 1441, 1442,

and 1446, and asserts that the federal court has original jurisdiction pursuant to 28 U.S.C. § 1331.

<u>See</u> Notice of Removal ¶ 3, at 2.  The Court concurs with the other district courts within the Tenth

Circuit that have concluded that the 1986 amendment abolishes the relevance of the derivative

jurisdiction doctrine for those cases removed under 28 U.S.C. § 1441, and "permits removal in all

cases [under that section] where removal was previously barred by the . . . doctrine." <u>Yellow Freight</u>

<u>Sys., Inc. v. Adams Brush Mfg. Co.</u>, No. CIV-97-2310 EEO, 1997 U.S. Dist. LEXIS 13491, at *9

(D. Kan. Aug. 5, 1997); <u>See</u> <u>Foss v. United States</u>, 705 F. Supp. 537, 538 (D.N.M. 1989)(Mechem,

J.).  Accordingly, to the extent that the case was removed pursuant to 28 U.S.C. § 1441, it does not

matter whether the state court had jurisdiction over the case or any particular aspects of it.  The sole

jurisdictional question remaining is whether the federal court would have had original federal-question

subject-matter jurisdiction over the case.  The Court answers that question in the affirmative.

C.   **THE DERIVATIVE JURISDICTION DOCTRINE PROHIBITS THE EXERCISE OF FEDERAL JURISDICTION TO THE EXTENT THAT THE UNITED STATES REMOVED THIS CASE PURSUANT TO 28 U.S.C. § 1442(a)(1).**

J&M contends that 28 U.S.C. § 1442(a)(1), the federal officer removal provision, provides

a basis for federal subject matter jurisdiction.  See Motion to Dismiss at 4.  J&M's assertion requires

the Court's careful scrutiny, however, because 28 U.S.C. § 1442(a)(1) does not create federal

jurisdiction; it merely provides that certain federal claims can be removed to federal court.  See Mesa

v. California, 489 U.S. 121, 136-37 (1989)(holding 28 U.S.C. § 1442(a) "cannot independently

support Art. III 'arising under' jurisdiction"); Fent v. Okla. Water Res. Bd., 235 F.3d 553, 555 (10th

Cir. 2000).  To establish jurisdiction, a colorable federal defense must accompany removal, because

"it is the raising of a federal question in the officer's removal petition that constitutes the federal law

under which the action against the federal officer arises for Art. III purposes."  Mesa v. California,

489 U.S. at 136.  See Dalrymple v. Grand River Dam Auth., 145 F.3d 1180, 1185 (10th Cir.

1998)("[R]emoval under [28 U.S.C. § 1442(a)] is predicated not just on the federal character of the

defendant, but also on the averment of a defense grounded in federal law.").

J&M argues that, although it is a private party, it was acting as a federal contractor, and may

therefore invoke the federal officer removal provision because: (i) it acted under the direction of the

IRS; (ii) there is a colorable federal defense to Bowers' claims against it; and (iii) there is a causal

-25-

nexus between Bowers' claims and the acts J&M performed at the IRS's request.  See Greene v. Citigroup, Inc., 2000 U.S. App. LEXIS 11350 at *6.  The United States acknowledges that J&M was acting at the IRS' request when it towed Bowers' vehicle.  See United States' Brief in Support at 1. The Court believes that, considering the posture of other district courts within the Tenth Circuit that have extended the federal contractor defense beyond military contracts, see Andrew v. Unisys Corp, 936 F. Supp. at 830, and the holding of at least one Circuit Court of Appeals extending the defense to contracts for services, see Hudgens v. Bell Helicopters/Textron, 328 F.3d at 1334, that J&M has, at least, a colorable federal defense.  Finally, it is obvious that a causal connection exists between Bowers' conversion claim against J&M and the towing action that J&M performed at the IRS' request.

Despite these conclusions, the Court need not reach whether J&M has satisfied these criteria, because, as Bowers accurately points out, J&M did not remove the case.  See Bowers' Response at 3 n.1.  Further, even if J&M had the right to remove the case under 28 U.S.C. § 1442(a)(1), the time to do so has expired.  See 28 U.S.C. § 1446(b).  The same analysis, however, would support the Court's jurisdiction based upon the United States' removal.  The United States is a party entitled to remove pursuant to 28 U.S.C. § 1442(a)(1), and by asserting that its sovereign immunity bars the suit against it, has presented a colorable federal defense.  See Fent v. Okla. Water Res. Bd., 235 F.3d at 555 (categorizing sovereign immunity as a "requisite federal defense" establishing jurisdiction when asserted in combination with a removal under 1442(a)).

Nevertheless, the Court agrees with those courts that have previously considered the scope of 28 U.S.C. § 1441(f), and reasons that, in accordance with the plain language of subsection (f), the elimination of the derivative jurisdiction doctrine has been limited to those cases removed under 28

U.S.C. § 1441.  See See Kasi v. Angelone, 300 F.3d at 503 n.6 (4th Cir. 2002); Oklahoma v. Hopkins (In re Criminal Subpoena Duces Tecum Served on FBI SA Ed Gray), 1998 U.S. App. LEXIS 25779, at **2-3; Elko County Grand Jury v. Siminoe (In re Elko County Grand Jury), 109 F.3d at 555; Edwards v. U.S. Dep't of Justice, 43 F.3d at 316.  Consequently, because the Court has determined that the state court did not have jurisdiction over Bowers' cause of action against J&M, see infra Part I.D, to the extent that the United States removed this matter pursuant to 28 U.S.C. § 1442, the Court does not have jurisdiction over the case.

The Court understands that, in reaching this conclusion, it is categorizing derivative jurisdiction as a jurisdictional, rather than a procedural, defect that cannot be waived by the parties. The Court recognizes that this analysis is complicated by the unique position of derivative jurisdiction in federal law.  Article III of the Constitution circumscribes the extent of federal judicial power, and Congressional statutes typically create or proscribe subject-matter jurisdiction over particular cases. The derivative jurisdiction doctrine, however, is a creature of common law that is not easily manipulated to fit within the traditional categories applicable to removal analysis.

The parties have not cited, and the Court has not found, any appellate court cases that consider whether a lack of derivative jurisdiction is a procedural defect that may be waived by the parties or a whether such continues to undermine the subject-matter jurisdiction of the federal court after the thirty-day remand period has expired.  At least one federal district court has considered the issue, however, and determined that the "absence of derivative jurisdiction goes to the subject-matter jurisdiction of the state court and, consequently, to the subject-matter jurisdiction of the federal court," and therefore is a jurisdictional defect that the parties may not waive.  Essington Metal Works, Inc. v. Retirement Plan of Am., Inc., 609 F. Supp. 1546, 1551 (E.D. Pa. 1985).

In agreeing with the federal district court in Essington Metal Works, Inc. v. Retirement Plan of America, Inc., the Court relies on the language of Justice Brandeis' opinion in Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co., 258 U.S. 377 (1922), the predicate for the derivative jurisdiction doctrine.   After describing removal jurisdiction as "derivative," Justice Brandeis concluded that, "[i]f the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." 258 U.S. at 382.   The Court sees some inherent tension in the conclusion that derivative jurisdiction problems can not be waived, because, although it makes sense that federal courts cannot derive jurisdiction from a court that does not have any, there is some inconsistency in categorizing a lack of derivative jurisdiction as a defect that cannot be waived when the federal court has independent grounds for asserting original federal-question jurisdiction over the subject-matter. Nevertheless, working within the framework of Justice Brandeis' opinion, which appears to categorize the problem as one of subject-matter jurisdiction, which cannot be waived, the Court does not see how, if it was incapable of deriving subject-matter jurisdiction from the state court on the day a party's notice of removal is filed, it will suddenly be empowered to exercise the same subject-matter jurisdiction once thirty days have come and gone.

**D.    THE COURT HAS JURISDICTION BECAUSE BOWERS' COMPLAINT PRESENTS A FEDERAL CAUSE OF ACTION.**

The United States argues that, in its efforts to collect delinquent taxes, the IRS had the authority, pursuant to 26 U.S.C. § 6331, to place a levy upon Bowers' automobile.  See United States' Brief in Support at 10-11.  Under federal law, "property taken or detained under any revenue law of the United States shall not be repleviable, but shall be deemed to be in the custody of the law

-28-

and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof." 28 U.S.C. § 2463. Accordingly, if J&M's seizure of Bowers' automobile at the IRS' direction was consistent with the administrative levy provisions of 26 U.S.C. § 6331, then, pursuant to 28 U.S.C. § 2463, any adjudication of property interests in the automobile is exclusively within the federal courts' jurisdiction. See N.H. Fire Ins. Co. v. Scanlon, 362 U.S. at 409.

Without regard to the statute's plain language, Bowers argues that no authority supports the proposition that 28 U.S.C. § 2463 precludes a state court from exercising jurisdiction over this matter. See Bowers' Response at 4. Bowers argument is based on the premise that the seized property is not in the United States' possession or control. See id. at 5. He asserts that each of the three cases J&M cites in support of the proposition that 28 U.S.C. § 2463 precludes state court action, Berry v. Ketchikan Public Utilities, Williams v. Atlanta Federal Savings & Loan Association, and People v. Hernandez, is distinguishable because in each the disputed property was still in the government's possession. See Bowers' Response at 4.

Although the Court is not certain that the cases J&M cites can be distinguished in this way, see Berry v. Ketchikan Pub. Utils., 727 P.2d at 763 (disputed funds in the possession of taxpayer's employer); People v. Hernandez, 216 N.W.2d at 439 (disputed funds in the possession of law enforcement), it does not need to make that determination to resolve this case. The text of 28 U.S.C. § 2463 makes no reference to possession or control and the Court sees no reason to read into the statute a requirement that Congress has not mentioned. Moreover, the Court believes that, even if such a requirement did exist, J&M and the United States would have satisfied it in this case. When J&M seized and towed Bowers' automobile, it did so exclusively under the direction and at the discretion of the United States. J&M acquired no title or property interest in the automobile, and it

-29-

was not free to dispose of it as it chose.  The United States held exclusive entitlement to any proceeds that a subsequent tax sale might generate.  J&M was obligated to move the automobile to a location of the United States' choosing, and to furnish it to the United States upon demand.  Under these circumstances, the Court believes that, at all times material to this case, the automobile was in the United States' possession and custody.

The Court acknowledges that, although 28 U.S.C. § 2463 limits the adjudication of interests in property seized pursuant to federal revenue laws to federal courts, it does not affirmatively confer jurisdiction upon federal courts.  See Lonsdale v. United States, 919 F.2d at 1444.  Any cause of action, along with any corresponding waiver of immunity on the part of the United States, must be found in a separate statute.

The Court recognizes that Bowers' Complaint against J&M is styled as a state-law conversion claim.  Regardless of how his cause of action is articulated, however, Bowers' essential challenge is to prove the seizure and sale of his automobile was illegitimate and contrary to law.  Congress has expressly waived the United States' sovereign immunity with respect to suits for unlawful tax collection, and created a federal cause of action for civil damages associated with such collections. See 26 U.S.C. § 7433(a).  Notably, the Tenth Circuit has recognized that, with respect to unlawful tax collection actions, a civil action under 26 U.S.C. § 7433 is a taxpayer's exclusive remedy.  See Rosson v. United States, 127 Fed. Appx. at 400-01.  Therefore, to the extent that Bowers has a viable cause of action, the Court must construe it as an action under 26 U.S.C. § 7433.

Bowers' points out that the "only application of [26 U.S.C.] § 7433 is against the United States," and that, because he did not sue the United States, "such federal statutes have no application to [his] claim against the J&M."  Bowers' Reponse at 4. Bowers' argument is misplaced, because he

mis-characterizes the nature of his suit.  The Court believes that, when it pierces Bowers' artful

pleading, his claim is one for unlawful tax collection.  The only cause of action available to him is a

civil action under 26 U.S.C. § 7433, and therefore, that he did not name the United States in his

complaint is immaterial.  The United States is the real party in interest when a taxpayer brings a suit

under 26 U.S.C. § 7433.  See  Gilbert v. DaGrossa, 756 F.2d at 1458.  In addition, notwithstanding

the statutory context of his lawsuit, now that the United States has agreed to indemnify J&M

pursuant to the indemnification agreement between the two, Bowers' "suit is against the sovereign

[because] 'the judgment sought would expend itself on the public treasury or domain, or interfere

with the public administration,' or [would] 'restrain the Government from acting.'"  Dugan v. Rank,

372 U.S. at 620.

### E.   THE COURT HAS JURISDICTION BECAUSE BOWERS' COMPLAINT PRESENTS A SUBSTANTIAL FEDERAL QUESTION.

Even if Bowers' claim were construed as a state-law cause of action, the Court would still

have original jurisdiction over the case under 28 U.S.C. § 1331, because it presents a substantial

federal question.  In Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, the

Supreme Court reaffirmed that although federal courts' jurisdiction is typically established "by

plaintiffs pleading a cause of action created by federal law . . ., [the] Court [has] recognized for nearly

100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate

significant federal issues."  545 U.S. at 312  (citing Hopkins v. Walker, 244 U.S. 486, 490-91

(1917)).  Bowers' case meets the criteria the Supreme Court in Grable & Sons Metal Products, Inc.

v. Darue Engineering & Manufacturing established for cases in this latter category.

First, Bowers' case involves a substantial federal issue that necessarily relates to the national

interest in providing a federal forum for federal tax litigation.  Just as in <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>,  the central issue in the case -- whether J&M's seizure of Bowers' automobile at the IRS' direction was permissible under 26 U.S.C. § 6331 -- requires construction of a federal tax provision. In <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, Darue premised its title in the IRS' compliance with the notice statute in the federal tax law, 26 U.S.C. § 6335; in Bowers' case, J&M premises its title in the IRS' compliance with the administrative levy statute, 26 U.S.C. § 6331.

Not only is a federal issue present, it is substantial.  Bowers' case implicates the governments's "strong interest in the 'prompt and certain collection of delinquent taxes.'" 545 U.S. at 315.  Consistent with the Supreme Court's reasoning in <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, the Court believes "the ability of the IRS to satisfy its claims from the property of delinquents" requires a clear understanding of how it may use third-party assistance to collect that property.[3]  <u>Id.</u>  The federal courts are the appropriate forum in which to clarify this understanding.  <u>See</u> <u>id.</u> ("The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court.").

This understanding is in accord with the Tenth Circuit's reasoning in <u>Nicodemus v. Union Pacific Corp.</u> and this Court's decision to remand in <u>Bar J Sand & Gravel, Inc. v. Western Mobile</u>

---

[3]Although the Court cannot take a position on the merits of Bowers' claim before it decides the jurisdictional issues in this case, it notes that at least one other federal district court has considered whether the IRS' use of a private towing company to seize a delinquent taxpayer's automobile is permissible under 26 U.S.C. § 6331.  The District Court for the District of Maryland posited that very question as a hypothetical and reasoned that "Congress must have intended 26 U.S.C. § 6331 to authorize the tow trucks' actions; otherwise, the IRS would be unable to secure the help of private persons and entities to help in lawful tax collection since such persons and entities would be liable in a civil suit for damages caused while acting under the lawful direction of the IRS." <u>Oasis Nite Club, Inc. v. Diebold, Inc.</u>, 1973 U.S. Dist. LEXIS 14240, at *38.

New Mexico, Inc.  In Nicodemus v. Union Pacific Corp., the Tenth Circuit approved the exercise of federal jurisdiction because the case turned on the court's interpretation of the scope of federal land grants, and noted that, because the government had a reversionary interest in the rights-of-way at issue in the case when those rights-of-way were no longer being used for their designated purposes, the contested interpretation of the land-grant statutes involved a substantial federal issue.  See 440 F.3d at 1235-36.  Conversely, this Court in Bar J Sand & Gravel, Inc. v. Western Mobile New Mexico, Inc., ruled that no federal interest was implicated because Bar J did "not premise its breach of contract claim on any point of federal law," and its pleadings did not invoke federal law.  2005 U.S. Dist. LEXIS 39142, at *33, 35.  It was unclear that the Court in Bar J Sand & Gravel, Inc. v. Western Mobile New Mexico, Inc. would ever have to decide a federal question.  See id. at *35 (describing the case as lacking "a necessary and substantial question of federal law").  The federal question in Bowers' case -- whether the IRS could lawfully seize his automobile under 26 U.S.C. § 6331 -- seems unavoidable.

Further, exercising jurisdiction in this case will not disturb "any congressionally approved balance of federal and state judicial responsibilities."  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 314.  Similar to the quiet title action that the delinquent taxpayer raised in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, and the trespass and unjust enrichment action that the landowners raised in Nicodemus v. Union Pacific Corp., the Court believes that only on very rare occasions will a state-law conversion action raise a contested matter of federal law.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 315; Nicodemus v. Union Pacific Corp., 440 F.3d at 1237.  Consequently, "federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the

federal-state division of labor," and therefore exercise of such jurisdiction is appropriate.  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 315.

     In his response to J&M's motion to dismiss his complaint, Bowers does not address the Supreme Court's ruling in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, but rather cites to the Tenth Circuit's decision in Crow v. Wyoming Timber Products Co. for the proposition that "26 U.S.C. § 7433 creates no rights for Bowers against J&M, and would not be any sort of exclusive remedy for Bowers as against J&M."  Bowers' Response at 4.  Bowers contends that his case is purely a matter of state law and that a "plaintiff does not conceal a federal question when the allegedly relevant federal statute creates no rights against the party he is suing." Id. (quoting Crow v. Wyo. Timber Prods. Co., 424 F.2d at 96)(emphasis in original).  The United States, in its brief in support of J&M's motion to dismiss, counters Bowers' assertion and contends that "[t]he rationale in Crow[ v. Wyoming Timber Products Co.] appears not to be viable in light of the more recent Supreme Court decision in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing."  United States Brief in Support at 19.

     The Court does not need to determine whether Crow v. Wyoming Timber Products Co. remains viable in light of the Supreme Court's holding in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.  Whatever vitality the Tenth Circuit's decision in Crow v. Wyoming Timber Products Co. retains, the Court believes it can be distinguished from Bowers' case.

     First, the taxpayer's cause of action in Crow v. Wyoming Timber Products Co. did not involve a lawsuit against a party acting under the IRS' direction.  The taxpayer's case therefore did not directly impact "the ability of the IRS to satisfy its claims from the property of delinquents," and consequently, did not implicate the United States' "strong interest in the 'prompt and certain

collection of delinquent taxes.'" <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S.
at 315.

Second, the defendant in <u>Crow v. Wyoming Timber Products Co.</u> characterized the taxpayer's
requested relief as "essentially that afforded by 26 U.S.C. § 7426," a statute that afforded relief
exclusively against the United States, and which arguably, did not provide the taxpayer with a federal
cause of action.   424 F.2d at 96.  <u>See</u> 26 U.S.C. § 7426(a)(1) (empowering any person, "<u>other</u> <u>than</u>
<u>the person against whom is assessed the tax out of which such levy arose</u>," to bring suit in a federal
court on a claim that the IRS wrongfully levied on or sold property)(emphasis added).  Bowers'
conversion suit, however, which J&M and the United States have analogized to an unlawful tax
collection suit under 26 U.S.C. § 7433, endows him with a cause of action.  That this cause of action
is limited to actions against the United States and that he did not name the United States in his
complaint is irrelevant, because, the United States has agreed to indemnify Bowers, and, in suits
pursuant to 26 U.S.C. § 7433, "[t]he United States is entitled to be substituted as the proper party
respondent to the extent that the respondents named in the Petition are sued because of action taken
by Internal Revenue Service employees in their official capacities."  <u>California ex rel. Ervin v. Dist.</u>
<u>Dir.</u>, 170 F. Supp.2d at 1045.

Finally, unlike the taxpayer's cause of action in <u>Crow v. Wyoming Timber Products Co.</u>, and
similar to the taxpayer's claim in <u>Grable & Sons Metal Products, Inc. v. Darue Engineering &</u>
<u>Manufacturing</u>, Bowers' claim turns on the construction of federal law.  The taxpayer in <u>Crow v.</u>
<u>Wyoming Timber Products Co.</u> was not challenging the validity of the IRS' levy upon his property;
rather, he simply brought a replevin action, an action in property, seeking to re-establish his
ownership in the property.  That the defendant in <u>Crow v. Wyoming Timber Products Co.</u> had

acquired the disputed property at a federal tax sale was certainly a factor that the state court would have had to consider to determine the property rights and interests of the defendant, but it would not have necessarily required an assessment of the underlying validity of the levy and sale process. Conversely, Bowers' conversion action, an action in tort, depends entirely on the construction of a federal tax provision. Bowers' alleges in his complaint that J&M seized his automobile "without any lawful claim" against him or the automobile. Bowers' Compaint ¶ 4, at 1. Pursuant to 26 U.S.C. § 6331, however, the IRS may collect taxes from a delinquent taxpayer, without judicial intervention, "by levy upon all property and rights to property." 26 U.S.C. § 6331. If the IRS, acting through J&M, complied with the terms of 26 U.S.C. § 6331, then its actions were lawful and Bowers' claim must fail; if it did not, then Bowers' action will succeed.

The Court believes that it has jurisdiction over this entire case. The Court acknowledges, however, that because the Court has determined that the state court did not have jurisdiction over Bowers' cause of action against J&M, to the extent that the United States removed this matter pursuant to 28 U.S.C. § 1442, the Court does not have jurisdiction over the case. Nevertheless, when the Court pierces Bowers' artful pleading, it finds that his claim is essentially a cause of action for unlawful tax collection over which the federal courts have exclusive jurisdiction pursuant to 28 U.S.C. § 2463. Consequently, for Bowers' action to be sustained, it must be construed as an action for unlawful tax collection under 26 U.S.C. § 7433. Finally, consistent with the Supreme Court's decision in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, Bowers' claim against J&M turns on an interpretation of federal law and involves a federal question sufficiently substantial to implicate "the national interest in providing a federal forum for federal tax litigation." 545 U.S. at 310.

## II.     THE COURT WILL DISMISS BOWERS CONVERSION CLAIM FOR FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

J&M seeks dismissal of Bowers' Complaint on the merits.  See Motion to Dismiss at 8.  Given that the Court has determined that it has subject-matter jurisdiction to hear this case, it must now determine whether Bowers satisfied all the jurisdictional prerequisites that must be met before the Court can exercise that jurisdiction.  Because a plaintiff must exhaust his administrative remedies as a jurisdictional prerequisite before filing suit under 26 U.S.C. § 7433, and because Bowers did not satisfy this requirement, the Court will grant the motion to dismiss.

Bowers' exclusive remedy to recover damages resulting from any unlawful actions related to the seizure of his automobile is to bring a cause of action against the United States under 26 U.S.C. § 7433.  Under 26 U.S.C. § 7433, the United States waives its sovereign immunity with regard to civil actions for damages when any IRS officer or employee "recklessly, intentionally or negligently disregards any provision of the Internal Revenue Code in connection with any collection of federal tax with respect to a taxpayer."  Kahre v. United States, No. CV-S-02--375-LRH-LRL, 2003 U.S. Dist. LEXIS 6948, at *13 (D. Nev. March 10, 2003).  Before a plaintiff may file such a suit, however, the court must determine "that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1).  Several courts, including district courts within the Tenth Circuit, have categorized this requirement as jurisdictional in nature. See Info. Res. Inc. v. United States, 950 F.2d 1122, 1125 (5th Cir. 1992); Conforte v. United States, 979 F.2d 1375, 1377 (9th Cir. 1992); Glass v. United States, 424 F. Supp. 2d 224, 228 (D.D.C. 2006); United States v. Smith, No. 2:98CV00091K, 1999 U.S. Dist. LEXIS 9920, at *3 (D. Utah June 8, 1999).

The Court finds that it has subject-matter jurisdiction over this case.  Bowers' claim, despite being drafted as a state-law conversion claim, can be brought only as a federal action for unlawful tax collection pursuant to 26 U.S.C. § 7433. The exhaustion of administrative remedies is a jurisdictional prerequisite to a claim for unlawful tax collection under 26 U.S.C. § 7433.  Because Bowers has not made any showing that he exhausted his administrative remedies, the Court finds that it cannot exercise its jurisdiction over the matter at this junction, and will dismiss the claim.

J&M asks that the Court dismiss Bowers' Complaint with prejudice.  See Motion to Dismiss at 8.  Because the Court is dismissing his Complaint for not exhausting his administrative remedies, and thereby failing to satisfy 26 U.S.C. § 7433's jurisdictional prerequisites, the Court is not reaching the merits.  The Court will thus dismiss Bowers' Complaint without prejudice.  See Kahre v. United States, 2003 U.S. Dist. LEXIS 6948, at *14 (dismissing claims brought pursuant to 28 U.S.C. §§ 7432 and 7433 without prejudice when plaintiff failed to exhaust his administrative remedies).

**IT IS ORDERED** that the Motion to Dismiss Plaintiff's Complaint Against J&M With Prejudice is granted in part and denied in part.  The Plaintiff's Complaint is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties:*

Joseph H. Bowers
Albuquerque, New Mexico

     *Plaintiff pro se*

Don F. Harris
Albuquerque, New Mexico

     *Attorney for the Defendant*

Cynthia Messersmith
  Tax Division
United States Department of Justice
Dallas, Texas

     *Attorney for the Third-Party Defendants*